Good morning. Illinois Appellate Court, First District Court is now in session. The Fourth Division, Justice Robert Gordon presiding, case number 1-5-1735, People v. Leon Fields. Good morning, Your Honor. My name is Chris Evers from the Office of the State Appellate Defender representing Mr. Leon Fields in today's consolidated appeals. This is somewhat of an unusual situation that we have consolidated the first successive and second deferred petition. It's also my first Zoom oral argument, so I'm prepared to speak uninterrupted, but I would welcome any questions from the bench at any time as we move forward here. And would also like the courtesy of being able to reserve two minutes for rebuttal at the end of the opposing counsel's argument, if that's okay. Okay, thank you, Your Honors. Is opposing counsel there? I don't see opposing counsel. I'm here, Your Honor. Assistant State's Attorney Annette Collins for the people of the state of Illinois in these consolidated cases. Okay, thanks. Okay, then Appellant, you could proceed with your argument. Thank you, Your Honors. Let me ask you this first. Are you going to reserve some time for rebuttal? Yes, I'd like to reserve two minutes for rebuttal, Your Honor. Okay, well then proceed ahead. Go ahead. Thank you. Ultimately, Mr. Leon Fields would like the opportunity for an evidentiary hearing, because for the last 10 years, he's been trying to have the ability to bring in Renee Fitzgerald and Crystal Johnson and testify to the circuit court. These two new eyewitnesses to the shooting of Daryl Hood and Curtis Hood, who can say that he unequivocally was not one of the group of men involved in that shooting. That is a claim of actual innocence, and that would be of such a conclusive nature that would likely probably lead to a different result in retrial. And that's what both of these petitions are about here today. While at different procedural postures, a lot of the legal standards and factors that we're using here are the same throughout the court. We, of course, have the actual innocence claim that the affidavits need to be newly discovered, material and non-cumulative, and of such a conclusive nature. We believe that the circuit court erred when it dismissed the first successive petition based on Renee Fitzgerald's affidavit and failed to give leave to file on the second one for Mr. Crystal Johnson. In addition, these affidavits, leave to file and the second stage, must be taken as true. There is no credibility determinations for there unless there is some positive rebuttal of information in those affidavits by the ordinary trial, ordinary, I'm sorry, the original trial proceedings, which of course would be testimony and other factual evidence presented during that trial. And the most recent decision from the Illinois Supreme Court in Robinson made very clear that the idea that there is a contradiction between a new eyewitness and what they say in their affidavit of what they saw and a witness at the original trial does not count as positive rebuttal because that's the very nature of new eyewitness testimony. It will conflict. It will be conclusive because it now brings a new tenor to the trial and something that the court needs to consider. So with that, under the first prong, there's no doubt Crystal Johnson's affidavit was newly discovered for the second successive petition. That's what the circuit court found. And there should be no discussion really, frankly, about Renee Fitzgerald's affidavit. As detailed in the amended affidavit attached to the amended first successive petition, she has a very long story for the first time detailing her interaction with the police, what she saw, the harassment she suffered, that she left, and ultimately finding coincidentally Mr. Fields' mother at a funeral several years later and the process of getting that affidavit. That is newly discovered because it did not come before the trial. And as Coleman has made sure in the Illinois Supreme Court, the fact that a witness was known to defense counsel is not the standard for newly discovered under the actual innocence claim. It's whether the information that is contained in the affidavit was newly discovered to defense counsel and could not have been brought forward. And her affidavit details that. The 1990 discovery materials that the state attached to their motion dismissed should not be considered by this court. We've talked about this in our opening reply briefs just because it wasn't part of the ordinary trial proceedings. And so not considering that shows that Ms. Fitzgerald's affidavit taken as true was not available to defense counsel before trial. It wasn't until years later when Ms. Fields, Ms. Fitzgerald met Mr. Fields' mother that they were able to put that story together. The second factor of material and non-cumulative really doesn't appear to be at issue here. The state hasn't really responded or really isn't contesting that. So the third and most important factor is the conclusive nature going on here. And both affidavits demonstrate on the precedence of Robin itself Ortiz that a single new eyewitness that's certainly someone who's uninvolved such as Ms. Fitzgerald and Ms. Johnson can be of such a conclusive nature. And those affidavits do establish that. Looking at Robinson and the second successive petition first, that court made very clear in paragraph 60 that at the lower standard of colorable claim, that the idea that an affidavit will not be positively rebutted unless any fact finder could not find its veracity to be true. That's not the case. She was very clear that she was on the block of that shooting at the time of the shooting, saw four men walk by and begin shooting and learn that Daryl Hood died. The circuit court in its order dismissing or not denying leave to file and the state in its briefing has made much of the idea that the date of Mr. Hood's shooting was not included in the affidavit. And that's really a distraction. Her affidavit is taken as true. She's described the singular shooting that caused the loss of Mr. Daryl Hood's life. The original trial proceedings make very clear there was only one shooting on that block at that time that led to his death. I'm sorry, I thought it was, I apologize. And so that taken as true is of a conclusive nature that should lead to at least the reversal of the denial for leave to file. Mrs. Fitzgerald's petition for the same way, her affidavit also is of a conclusive nature. And Robinson gave some very good guidance on that, describing how yes, the Illinois Supreme Court in times past has talked about how trial testimony has contradicted the affidavit. But what they made very clear in their paragraph, they're discussing Sanders, what they focused on that in Sanders, which denied a petitioner, the ability to go to an impregnatory hearing, that there was some objective evidence in the original trial proceedings and medical examiner's testimony that the victim was shot two times when the new affidavit from a co-defendant who was recanting, who said how he was involved, but now he's going back and saying the petitioner was involved. That was positively rebutted. We have nothing like that in this current situation. Mrs. Fitzgerald was an uninvolved witness, saw the shooting, was clear that the group of dark-skinned men that were involved in that shooting was not my client, Mr. Fields. And this is similar to Robinson. There is no physical evidence in this. I know that the circuit court in its description of when it denied the leave to file on the second petition, quoted from the last, second to last paragraph of the direct appeal opinion of this court, talking about how bullets were matched between the shooting of Mr. Hood and the shooting of Michael Welch. And I'd like to clarify what the actual facts are in the record from the forensic examiner and the medical examiner, because that's an inaccurate statement. I don't know if the paragraph is written quickly or whatever, but on pages 10, 16 to 10, 23 of the medical examiner's report and the firearm expert from pages 12, 31 to 12, 45 discuss what was actually found at these two scenes and what was examined. The scene of Darrell Hood, there were ultimately 10 9mm shell casings and five .380 caliber shell casings from that. Firearm examiner found that there was at least a minimum of three firearms used, two 9mm firearms and a .380 firearm. That same firearm examiner ultimately got all of the 9mm casing collected from the Michael Welch shooting. There were 16 9mm casings from the Michael Welch shooting, in addition to eight .22 caliber casings. She determined that there were four 9mm casings from the Darrell Hood shooting, and eight 9mm shell casings from the Michael Welch, and that were from the same gun. So yes, a gun used in the Michael Welch incident was used at the shooting of Darrell Hood. There is no evidence whatsoever, though, that my client was holding a 9mm versus a .380 versus a .22. So the idea that they matched up my client being involved in firing the bullet that killed Mr. Hood is just not accurate, especially since the medical examiner testified to the three wounds that went through the face and neck. One had a bullet fragment that could not be determined. One was a through and through wound that no bullet was collected from, and then the third was a .380 caliber weapon bullet that was not something that was at both scenes. Also, the other bullets that and fragments collected from Mr. Hood were either .380 bullets complete, or two other bullet fragments that no one knows from that. So at the end of the day, Renee Fitzgerald's affidavit and Crystal Johnson's Fitzgerald's affidavit bring forward the idea that the evidence will be looked at a different light, because it's not just adding their new eyewitness testimony that Mr. Field was not involved. It supports his alibi witness of Mary Taylor, who said he was not there. Ms. Fitzgerald and Ms. Johnson say that he was not there. It supports the idea that Curtis Hood recantation can be looked at a new light, that yeah, he said Mr. Field was there, but then he kind of recanted, and they went back forth in the evidence for that. And certainly Ms. Fitzgerald's affidavit undercuts the state's use of her absence at trial to suggest to the jury that Mr. Field's, that she had seen the shooting through the testimony of asking an officer if Mr. Field had been shown a lineup saying he didn't know, but others might, and then arguing in rebuttal argument that Renee Fitzgerald was scared away. That, taking that evidence in kind of a new light, makes the probability that the result could be different on retrial. And so the circuit court erred for doing, dismissing the first successive petition. It also erred when it failed for it to leave to file in the second successive petition, because the Illinois Supreme Court in Ortiz has said that one new single eyewitness that says the defendant or the petitioner is not the shooter, is not there, is conclusive enough. And that was at an evidentiary hearing stage, and certainly it's evidentiary hearing stage is enough that was proven there. Here we take these affidavits as true. That should be sufficient for here. And for those reasons, we're asking this court, in this very unusual situation, to reverse the circuit court in both cases, sending back Renee Fitzgerald's case for an evidentiary hearing, was what he's been asking for for almost 10 years now, reversing the denial of leave to file, and sending essentially that back for an evidentiary hearing as well, which this court has the ability to do under the supervisory authority of 615b2, and just judicial economy, very similar to what the Illinois Supreme Court did in Buffer last year in 2019, skipping over the second stage proceedings, skipping over the evidentiary hearing because facts weren't an issue. They are here, so we could go to an evidentiary hearing. That was me speaking somewhat quickly, and I apologize for that, Honest. This is a very different situation for me, but that's our case in a nutshell, and I would welcome questions from the bench about any specifics of things I've talked about or other issues raised by the briefing on this matter. Okay. Does Justice Lamkin have any questions? Does Justice Burke have any questions? No, I'm good. Thank you. Okay. And I don't have any questions either. Okay. Thank you very much, Your Honor. I'm going to mute for a little bit here, but I'll, of course, come back for rebuttal time. Okay. Let's hear from the state. Thank you, Your Honors. Again, Assistant State's Attorney Annette Collins on behalf of the people of the state of Illinois. It's our position that the Robinson decision, while new, does not make what occurred below in the circuit court incorrect. In fact, we believe that the Robinson decision actually supports what the circuit court did in this case, and while there are two different standards because there are two different procedural postures, ultimately the propriety of the circuit court's decisions below depends heavily on two particular things. One, whether this new evidence is actually newly discovered, and two, whether it places the trial evidence in such a different light that it undermines confidence in the judgment of guilt. And it's our position that a review of defendants' proffered affidavits indicates that not only are they not newly discovered for the most part, but they also do not support an actual innocence claim insofar as they do not call into question the trial evidence or undermine confidence in the verdict in this case. Now, I'll start with the first successive post-conviction petition, which was dismissed at second stage. In that petition, defendant presented five affidavits. Renee Fitzgerald is the one that defendant focuses on today for the most part, but Renee Fitzgerald was not a newly discovered witness to the defense. Obviously, she was known to the defense because her name was contained in police reports and therefore discoverable. But even more so, she was known to the defense because she had provided a statement to a defense investigator a year before trial. And in that statement, she said, I didn't see who did it. I heard shots and ducked. Now, defendant says that she didn't come forward before trial and this information is new because her affidavit evidence is somehow different than what she told the investigator. But that's not entirely correct because if we take a look at her affidavit, she says she didn't testify at trial. She was coerced by police to identify the defendant, but she avoided testifying at trial. She says she lost her kids and so eventually left for Minnesota. In that order, that's her description of the events, but there's nothing about being unavailable to the defense. And while she alleges police coercion that forced her to identify the defendant, there's no reason to believe from her affidavit or anything in this record that she was coerced by defense counsel in any way. So, this evidence that she provides now could have been brought forth previously. She was known to the defense, but even more significant, her proffered affidavit testimony does not cause a lack of confidence or undermine confidence in the verdict in this case. Obviously, prior to trial, she told the defense she says she was waiting in the car, saw four men who were in dark clothing with guns, and then ducked when she heard shots. The way this offense occurred was there was initial round of shooting and then defendant walked up to the victim and shot the victim as the victim was on the ground. That was the testimony from the eyewitnesses at trial, two of them. So, Renee Fitzgerald's affidavit testimony that she didn't see the actual shooting, she didn't see who shot the victim, does not undermine confidence in the verdict in this case. And in fact, is not at all like the way the defense is trying to portray it. She doesn't say defendant wasn't on the scene. She merely says that she saw four men with guns and defendant wasn't one of them. But we also have trial testimony from one of our eyewitnesses who indicates that there were five men with guns. So, Renee Fitzgerald's new account, which is not entirely inconsistent with her earlier statement to the defense that she didn't see the shooting, doesn't undermine confidence in the verdict in this case. Now, even if believed, which is of course the standard defendant correctly propounds, even if believed, Renee Fitzgerald's new affidavit doesn't say that defendant wasn't the shooter of the victim, Darrell Hood, in this case, nor does it call into question the witness's testimony at trial. Now, the other four affidavit witnesses, defendant didn't mention them at oral argument, but those witnesses are not actual innocence witnesses. Those witnesses all claim that our Curtis Hood testimony at trial was incredible. Those were essentially affidavits that were available to the defendant. These individuals are listed in police reports, two of whom say they were arrested for the murder, but released. So, their account, their new affidavits don't actually say defendant wasn't a shooter. They don't say defendant was innocent. So, those also don't call into question the validity of the verdict in this case. And that's precisely why the circuit court dismissed defendant's successive petition at the second stage because none of these affidavits actually support the claim or show a substantial claim of actual innocence. Now, as to the second appeal before this court, that is in a different posture. Defendant does not have to show as much as he's at the second stage. However, he still hasn't provided enough to meet the threshold showing of actual innocence. Again, he presents Renee Fitzgerald's affidavit, but as I pointed out earlier, her affidavit does not indicate the defendant was not on the scene, doesn't indicate the defendant was not the shooter who killed the victim. And Crystal Johnson's affidavit is no better. Crystal Johnson is technically a newly discovered witness. This is the first time we've ever heard of her. And her description of how she provided this information to the defendant actually does comport with the newly discovered witness concept. However, when we take a look at the content of her affidavit, it also says that she didn't see the shooting. In fact, she doesn't provide a date. She also says she saw four guys with dark clothes and guns who passed by. But she says she ran in the other direction at this time. And ultimately, she cannot say, nor does she say the defendant was not the man who walked up to the victim on the ground and shot him in the face, the neck and elsewhere on his body. So even if believed, neither Crystal Johnson's account nor Renee Fitzgerald's account established the defendant wasn't the light-skinned offender who was known to both our eyewitnesses at trial, and who went over to the victim after approaching and shooting, and then shot the victim to death. The other two affidavits that defendant provides, again, in that particular pleading are also just credibility on one of our witnesses and also don't establish even a colorable claim of actual innocence. To put this case in the same terms as Robinson, the affidavits in this case just didn't contain evidence of such a conclusive character, that when considered along with the trial evidence, would lead to a different result. Because as I just detailed, the affidavits from these two witnesses who were on scene at the time, do not say defendant was not the shooter of the victim, because neither of these new witnesses actually saw the shooting of the victim in this case. And if we take a look at the Robinson case, it serves as the illustrative example of why the circuit court's ruling in this case was actually correct. Robinson is qualitatively different than the instant case. We have two eyewitnesses in this case. Robinson had no eyewitnesses. Not only do we have two eyewitnesses who knew defendant and identified him, we have another witness from a previous shooting who identified the defendant as the shooter in that case. And that case involved the same gun that was used in the instant crime. So the link is not just ballistic. The link has to do with eyewitness testimony from the other crimes victim. Now Robinson also had affidavits that not were newly discovered, but also established that it was not just unlikely, but improbable that defendant was the shooter in that case. While we don't have that same kind of distinction in this case, our affidavits or defendant's affidavits, his witnesses do not establish that defendant wasn't on scene. They simply say that he wasn't one of the four men that those two witnesses saw. We know from all of the testimony, including from the affidavits, that there were a number of people outside that evening. So the fact that defendant wasn't one of these four men does not mean that he didn't go up to the victim and shoot him as our witnesses testified at trial. So for these reasons and those in our brief, we argue that Robinson does control, but that Robinson does not mandate a different result in this case and actually supports the decision of the circuit court. And we ask for affirmance of that decision. Thank you. Any questions by Justice Lampkin? No, thank you. Any by Justice Byrd? No, thank you. I have none. All right, let's hear the rebuttal. Okay, thank you, Your Honor. Okay, first and foremost, the newly discovered thing for Rene Fitzgerald saying that defendant's attorney had not coerced her again. The 1998 discovery materials should not be used there, but it's clear. The fact that a witness was known does not mean that it is not newly discovered. That's been well established, and even the 1998 discovery materials show that why would defense counsel try to bring someone as a witness who said they didn't see it. Her affidavit, amended affidavit, is true. That goes and should be considered newly discovered. As for opposing counsel's description of the shooting there, let's be very clear. Everyone is consistent. Curtis Hood said all the people involved in the shooting were in a group behind him that he sensed. A singular group of people that were there before the final shot hit Mr. Darrell Hood. That's when they supposedly said Mr. Fields was there. Deron James said a group of men were there to begin with. Doesn't have the field as part of that group. Mr. Fitzgerald and Ms. Johnson also drove a singular group of people that began shooting. So they saw those men begin firing weapons. There is not a possibility that Mr. Fields ran up from someplace different later based on the state's own witnesses. That is consistent. They saw the group. Mr. Fields was not part of that group. He was not present there. That is of a conclusive nature and is similar to the authority even cited by Robinson, of Williams and White and Adams, where a single eyewitness, someone else was the shooter or the defendant or the petitioner was not there, is of a conclusive nature and should be considered by this. And ultimately, it's not that Mr. Fields needs to prove right now that he has sufficient evidence to win a retrial. As the Illinois Supreme Court has made clear, this is probability, not certainty, that the court uses as a standard here. And two uninvolved eyewitnesses that saw the group of men involved in the shooting, the same group described by the state's own witnesses, say that Mr. Fields was not there. That is of a conclusive nature. Thank you. Well, I want to thank both sides. I think you, both of you gave excellent arguments and you gave us a very interesting case to decide. And shortly, you will have an order or an opinion on this case. And the court will be adjourned until 11 o'clock when we have our next case. Thank you very much.